AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUN 25 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. **19MJ2667**
One Blackberry Model Z10 STL100-3 Cellular )
Telephone, Serial Number 0716-7848-9449 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of Controlled Substances |

The application is based on these facts:
See Affidavit of HSI Special Agent Lisa Tracy, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lisa Tracy, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/25/19

*Judge's signature*

City and state: San Diego, CA         Hon. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Lisa Tracy, of the Department of Homeland Security, Homeland Security Investigations, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following cellular telephones: (1) one NYX Model xyn306 Cellular Telephone (**Target Device 1**) and (2) one Blackberry Model Z10 STL100-3 Cellular Telephone, Serial Number 0716-7848-9449 (**Target Device 2**), hereinafter referred to collectively as the "**Target Devices**," as described in Attachments A-1 and A-2 (incorporated herein by reference).

2. The **Target Devices** were seized on or about April 5, 2019, when Defendants Martha Alicia SALCEDO TELLEZ and Enrique YEPES ELISONDO were arrested for the importation of methamphetamine in violation of Title 21, United States Code, Sections 952 and 960. The **Target Devices** are currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

3. I seek authority to search the **Target Devices** for, and to seize evidence of, federal crimes, specifically, the importation of methamphetamine in violation of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference), for the time period March 5, 2019, through April 5, 2019.

4. Based on the information below, there is probable cause to believe that the **Target Devices**, described in Attachments A-1 and A-2, contain evidence, described in Attachment B, of the aforementioned crimes.

5. The information contained in this affidavit is based upon my experience, training, and consultation with other federal law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those

facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

6. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## EXPERIENCE AND TRAINING

7. I am a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since March 1996. I am a graduate of a two Federal Law Enforcement Training Center (FLETC) academies in Glynco, Georgia. Consequently, I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

8. I have been employed as a federal law enforcement officer on the southwest border for approximately 25 years. I was employed as a United States Border Patrol Agent in the San Diego Sector from November of 1993 to March of 1996. From March of 1996 to March of 2003, I was employed as a Special Agent in San Diego and Imperial Counties with the United States Department of Justice, Immigration & Naturalization Service (INS). On March 1, 2003, at the inception of the Department of Homeland Security (DHS), I became a Special Agent with the DHS Bureau of Immigration and Customs Enforcement in San Diego, which is currently known as Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am currently assigned to the Homeland Security Investigations, Deputy Special Agent in Charge (DSAC) San Ysidro Office, Contraband Smuggling Group 3. My current assignment is to investigate narcotics interdictions and Drug Trafficking Organizations (DTOs) that import illicit narcotics across the United States/Mexico international border and/or transport the smuggled narcotics to and/or through the Southern District of California.

9. Throughout my law enforcement career, I have applied for, executed, and/or participated in numerous federal search, seizure, and arrests warrants. I am familiar with the enforcement of laws relating to Immigration and Customs violations, including narcotics smuggling, the transportation of narcotics, and the laundering and movement of narcotics proceeds. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a Special Agent, consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers and their co-conspirators will use cellular telephones to communicate with load drivers who transport their narcotics and/or proceeds across the border, including to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP

3

addresses, social network data, and location data.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

12. On April 5, 2019, at approximately 6:48 a.m., Defendants applied for

4

1 permission to enter the United States from Mexico through the Otay Mesa, California Port of Entry. SALCEDO TELLEZ was the driver of a 2005 Ford Freestyle bearing Mexican license plates (the vehicle), and YEPES ELISONDO was the passenger. Based upon a computer-generated alert, the vehicle was referred to secondary inspection.

13. In secondary, a canine alerted to the roof towards the rear cargo area of the vehicle. An officer pried down the roof panel and discovered a non-factory compartment with an access panel. Seventy (70) packages weighing approximately 48.70 kg were discovered inside. The packages field-tested positive for methamphetamine.

14. Defendants were subsequently arrested. The **Target Devices** were seized from the vehicle incident to their arrest. Defendants identified the **Target Devices** as belonging to SALCEDO TELLEZ.

15. Post-arrest, Defendants denied knowledge of the narcotics. Screenshots were taken of some of the contents on the **Target Devices** at the Port of Entry; however, the **Target Devices** were not downloaded.[1]

16. Based upon my experience and investigation in this case, I believe that Defendants, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine. Based on my experience investigating narcotics smugglers, I also believe that SALCEDO TELLEZ and/or Defendants may have used the **Target Devices** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

17. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target**

---

[1] I am not relying on any data obtained at the Port of Entry to establish probable cause for this search warrant.

5

**Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Devices**.

18. Finally, I am aware that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as Defendant will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Devices** for data beginning on March 5, 2019, up to and including, April 5, 2019.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet

6

and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Defendant used the **Target Devices** to facilitate violations of 21 U.S.C. §§ 952 and 960. I also believe that probable cause exists to believe that evidence of that illegal activity committed by Defendant and other co-conspirators continues to exist on the **Target Devices**.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*
Special Agent Lisa Tracy
Homeland Security Investigations

Subscribed and sworn to before me this **25** day of June, 2019.

*[signature]*
The Honorable Barbara L. Major
United States Magistrate Judge

## **ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

(1) One NYX Model xyn306 Cellular Telephone (**Target Device 1**)



Currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:

(2) One Blackberry Model Z10 STL100-3 Cellular Telephone, Serial Number 0716-7848-9449 (**Target Device 2**)



Currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the **Target Devices** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 5, 2019, up to and including April 5, 2019:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952 and 960.**